HON. ASAHEL PECK,
HON. WILLIAM C. WILSON,  } ASSISTANT JUDGES.
HON. BENJAMIN H. STEELE.

---

## THOMAS HUGHES *v.* AUGUSTUS GRAVES.

### *Adverse Possession. Title.*

A prior possession of land without right can lawfully be disturbed by that party only who has the right to the possession.

Mere prior possession will enable the plaintiff to maintain trespass against this defendant who has a faultless title to the land on paper, but who does not own the land, a third person having acquired it by fifteen years' possession adverse to the grantors of the defendant.

The party who acquires a title to land, under the statute, by possession adverse to the true owner, acquires all the title of the true owner precisely as if he had a deed from him.

The defendant disturbed the plaintiff's prior possession. The defendant has a title on paper to the land. A third person, one Quenton, owns the land having acquired it by fifteen years possession. adverse to the defendant's grantors. *Held*, that all the right of the defendant's grantors vested by statute in Quenton as if they had conveyed to him; and Quenton, but not the defendant, had a right to disturb the plaintiff's possesion; and the plaintiff's possession was sufficient to enable him to maintain trespass against the defendant.

THIS cause was an act of trespass *quare clausum fregit*, with counts in trespass on the case joined agreeably to the statute. The action, by the agreement of the parties, was referred, to be decided according to law, and the defendant filed exceptions to the report of the referees.

On the hearing upon the said report and exceptions at the March Term, 1866, KELLOGG, J., presiding, the court, *pro forma*, decided that the plaintiff was entitled to recover of the defendant the sum of ten dollars for his damages, as stated in the report, and rendered judgment in favor of the plaintiff on the report accordingly,—to this decision and judgment the defendant excepted.

The referees reported as follows: "The plaintiff and defendant, "are severally the owners and occupiers of adjacent lots of land in "the village of Fairhaven, both lots being originally parcels of an "entire lot and each party deriving title to his lot from a common "source. The west line of the plaintiff's lot, as shown by his title "deeds, runs from the northwest corner of his dwelling house, south- "erly to the northwest corner of the Whipple lot. This line formed "the eastern boundary of ancient highway, discontinued more than "fifty years since, running over the lot of the defendant. Joshua "Quenton an intermediate grantor of the plaintiff, obtained his title "to the lot in 1806, and he and his heirs owned and occupied it until "May, 1847. During this period, the Quentons enclosed with "a fence a strip of land about ten feet wide at the north end, which "extended southerly and adjoining the plaintiff's west line from the "said northwest corner of the plaintiff's dwelling house, to and "beyond the south line of the defendant's lot taken from said ancient "highway, making a portion of their door yard, and continued to oc- "cupy peaceably and adversely claiming it as their own for more than "fifteen years. In the fall of 1847 an intermediate grantor of the

" defendant, claims this strip of land, sawed the fence in two where " the south line of the defendant's lot would strike it. But the fence " after two or three mouths was rebuilt by the plaintiff's grantor and " the occupation in them continued till March, 1861, as the fence " was still standing when the plaintiff took possession under his " deed, and when the defendant purchased his lot in April, 1862, he " claimed it and in the summer of 1862 erected a store which ex- " tended eastward within about eight inches of the plaintiff's dwell- " ing house and covered not only a portion of the strip of land so " enclosed by the Quentons taken from the old highway and the plain- " tiff's lot, but also a small portion of land included within the " boundaries of the plaintiff's lot. None of the deeds prior to the " deed of Olive Kelsey to I. Davey, of March 23d, 1860, by and " through which the plaintiff claims title to his lot, in their bounda- " ries included the piece of land enclosed by Quenton and taken " from said old highway, and which actually formed part of the " door yard to the plaintiff's house. If the court shall be of " opinion that the plaintiff takes nothing by Quenton's possessory " title because the land so claimed was not included in the boundaries " of his deed, then we only find for the plaintiff to recover of the " defendant seven dollars damages and his costs, otherwise we find " for the plaintiff to recover of the defendant ten dollars damages and " his cost."

NOTE.—The deed Joshua Quenton to Olive Kelsey is dated May 25th, 1847. The deed Olive Kelsey to I. Davey, is dated March 23d, 1860. The deed I. Davey to the plaintiff, is dated August 25th, 1860. The two latter deeds embraced the land in question.

*Nicholson & Ormsbee* and *E. N. Briggs*, for the defendant.

The case shows that Quenton originally owned the lot now owned by the plaintiff, and that during the period of his ownership he acquired a title by possession, to a small strip of land belonging to the defendant's lot, being the land in dispute. But Quenton's conveyance did not include this disputed tract. Nor did any intermediate grant from and after 1847, profess to include the land in dispute. Hence it is insisted that the plaintiff acquired no title.

The land in dispute cannot be considered as a mere *appurtenance*

23

of the Quenton lot, because it is a distinct lot, embracing separate territory of its own. To convey such a right, a deed is necessary, expressly including the land. *Cole* v. *Haynes et al.*, 22 Vt. 588. How then can it be claimed that the plaintiff takes the possessory title of Quenton, when it appears that the latter never conveyed that title? It is quite obvious that Quenton, knowing that it was not right to claim land really belonging to the defendant's grantors, did not intend to convey the piece he had occupied, but strictly limited his description to his original lot. Whether a suit could be maintained *by some one else* for the alleged trespass upon this disputed piece of land, is not now the question. It seems clear that a suit for that purpose cannot be maintained by the plaintiff.

*H. G. Wood, Prout & Dunton*, for the plaintiff.

I.  The report shows that the *western* boundary of the plaintiff's lot was an "*ancient highway*" and that the *eastern* boundary of the defendant's lot was the same highway, which formed a line of separation between the two lots. It also appears from the deeds that this highway existed as late as 1806. Therefore we claim, (1st.) That upon the discontinuance of the highway, the title of the plaintiff's grantors and of the defendant's grantors would extend to, and meet at the center of the old road,—and, (2d.) That this would be the case, even though the selectmen of the town, upon discontinuing the old road, had set the whole of the road over to the defendant's lot. *Pettibone* v. *Purdy*, 7 Vt. 514; *Marsh* v. *Burt*, 34 Vt. 289. *Consequently* even though the defendant's deed covers the premises in dispute *yet* he acquires no title thereby to the premises in dispute, as against the owner of the Hughes lot, except he shows an actual adverse and exclusive occupancy of the premises, under a *claim* of title, either by himself or his grantors, for the period of fifteen years.

II.  Joshua Quenton having enclosed the land in dispute with a fence and occupied the same as a door yard for such a length of time and in such a manner, as to acquire title thereto, and the fence being still standing, and the land in use for a door yard when he conveyed to Kelsey, even though it might not be included by the bound-

aries in the deed, yet would pass as an "appurtenance." *Swazey* v. *Brooks*, 34 Vt. 451 ; *Barnes* v. *Haynes*, 13 Gray, 192 ; *Leonard* v. *Leonard*, 2 Allen 543 ; *Tabor* v. *Bradley*, 18 N. Y. 109 ; 3 Sander's 401, note 2 ; *Elliot* v. *Carter*, 12 Pick. 436.

III. The plaintiff acquired title to the premises in dispute by virtue of the occupancy of himself and his grantors, and the court will presume a conveyance, after such length of possession, even though not within the boundaries of Quenton's deed. *Jakeway* v. *Barrett*, 38 Vt. 316 ; *Hodges* v. *Eddy*, 38 Vt. 327.

IV. The occupation of the plaintiff and his grantors being adverse, has determined all right or interest of the defendant and his grantors in the disputed territory, because the defendant can have no more right therein than his grantors, and they had lost all rights there under the statute of limitations, even if included in the description of their deeds, and this under the especial finding of the referees. The occupation of his grantors is continued in the plaintiff. *Doolittle* v. *Linsley*, 2 Aik. 155 ; *Cumer* v. *Gale*, 9 Allen 522.

V. If Graves took his deed while Hughes was in the actual adverse possession of the disputed territory, his, Graves', deed is void under the statute of this state, and Hughes' possession would be sufficient to enable him to recover in this cause. G. S., p. 451, § 26 ; *Selleck* v. *Starr*, 6 Vt. 194 ; *Robinson* v. *Douglas*, 2 Aik. 364.

VI. The acquiescence for so long a period of time by the defendant and his grantors, in the line as claimed by the plaintiff, precludes the defendant from maintaining the claim advanced in this cause. *Jackson* v. *Van Corlaer*, 11 Johns. 123 ; *Beecher* v. *Parmelee et al.*, 9 Vt. 352 ; *Rockwell* v. *Adams*, 6 Wend. 467, *supra* ; *White* v. *Everst*, 1 Vt. 181 ; *Burton* v. *Lazell*, 16 Vt. 158 ; *Ackley* v. *Buck*, 18 Vt. 395 ; *Brown* v. *Edson*, 23 Vt. 435 ; *Clark* v. *Tabor*, 28 Vt. 222 ; *Holton* v. *Whitney*, 30 Vt. 405 ; *Baldwin* v. *Brown*, 16 N. Y. 359.

The opinion of the court was delivered by

STEELE, J. The plaintiff is in actual possession and by his deed from Olive Kelsey, is entitled to the benefit of her possession. Her possession was prior to any possession by the defendant or his grantors. The plaintiff will therefore maintain this action of tres-

pass as against the defendant by virtue of mere prior possession; unless the defendant has a right to the possession. It is then the defendant's right and not the plaintiff's which we are required to examine. The defendant shows a faultless chain of title on paper, but it turns out he does not own the land. One Quenton acquired the ownership by fifteen years possession adverse to the defendant's grantors. The defendant's chain of deeds represents nothing in the disputed land except what his grantors lost and Quenton gained. If Quenton's title had been by deed from the defendant or his grantors, it is clear the defendant could not lawfully have disturbed the plaintiff's prior possession. Quenton had no deed, but his adverse possession for the statutory period gave him an absolute indefeasible title to the land against the whole world on which he could either sue or defend as against the former owner. That being the case is there sufficient virtue left in the defendant's paper title to warrant him in disturbing the plaintiff's possession. Under the present English statute of limitations it is settled there would not be. The case would stand precisely as if the defendant or his grantors had conveyed to Quenton. The plaintiff would be liable to be interrupted in his possession only by Quenton or some person under him. *Holmes* v. *Newland*, 39 E. C. L. 48, (11 A. & E., 44.) In *Jakes v. Sumner*, 14 Mees. & Welsby, 41 PARK, B., remarking upon the present English statute 3 and 4, W. iv. ch. 27, says the effect of the act is to make a parliamentary conveyance of the land to the person in possession after the period of twenty years has elapsed. The several English statutes, and their supposed points of difference, are commented upon in 2 Smith's Lead. Cases, 469, 559, *et passim*, and the case *Fenner* v. *Fisher*, Cro. Eliz. 288, is cited in *Holmes* v. *Newland*, *ubi supra*, as an authority under the previous statutes against the application to *these* statutes of the full extent of the rule applied to the statute of William 4. Any extended discussion of these English statutes would be unprofitable here for our statute, though mainly borrowed at the outset from the statute of *James*, was somewhat modified when transferred to Vermont, and has been materially altered in form in passing through the several revisions to which our laws have been subjected. It now provides after the section relating

to *actions* that, *"no person having right or title of entry into houses or lands shall thereinto enter but within fifteen years next after such right of entry shall accrue."* The first section takes away the remedy, and the second the right. G. S. p. 442, §§ 1 and 2. The title is vested in the adverse holder for the statutory period, or as is often said, "the adverse possession ripens into title." As a natural consequence the former owner is divested of all the new owner acquires. This interpretation giving to adverse possession for fifteen years the effect of a conveyance best accords with the other well settled doctrines upon the subject of limitations as applied to real property. A covenant to convey perfect title is satisfied by conveying a title acquired under the statute. In this country, as in England, an agreement made after the lapse of the statutory period to waive the benefit of the statute is not effective, but the title remains in the party who has acquired it under the statute, notwithstanding his waiver, until he conveys it back with all the solemnities required in any deed of land. In language of the books, "by analogy to the statute of limitations we presume a *grant* of incorporeal rights after adverse uses for fifteen years." It would certainly be an artificial construction of the statute which would make it a mere bar to the owner's right against the *person* only who occupied adversely. It relates to the rights of the party to the *land.* It makes no reference to *persons.* In this case, if the plaintiff's enjoyment of the land subjects him to an action or entry by Quenton, on the ground that Quenton and not the defendant is the true owner, it ought not at the same time so subject him to action or entry by the defendant, on the ground that the defendant is the true owner of the land. We are satisfied that no title remains in the defendant, that under our statute, he has no right to the possession. It has been held that a plaintiff in possession without right could maintain trespass against even the true owner for a disturbance, while the right of possession was in a third person by lease from the owner. *Phillips* v. *Kent & Miller*, 3 Zabriskie, N. J. Rep. 155. Here neither the right of possession nor the ownership was in the defendant.

The plaintiff claims that upon a correct construction of the deeds he has Quenton's title. This point we have not decided. The plaintiff's

prior possession will enable him to recover as against the defendant whose grantors suffered Quenton to acquire the land by adverse possession for the statutory period.

Judgment affirmed.