2004 VT 104

**DEPARTMENT OF FORESTS, PARKS AND RECREATION v. TOWN OF LUDLOW ZONING BOARD and John, Christine, Wayne and Beverly Lysobey**

[869 A.2d 603]

No. 02-336

¶ 1. October 20, 2004. For the third time, we consider property owner John Lysobey's efforts to obtain year-round access to his property, which abuts a public road located on land leased by the Department of Forests, Parks and Recreation to Okemo Mountain, Inc. for use as a ski trail during the ski season. Following a jury verdict on remand from our second opinion in this case, Lysobey obtained a judgment in excess of $150,000, including interest and court costs, to compensate him for being deprived of year-round access to his property. We vacate the jury's verdict and the superior court's judgment based on our conclusion that Lysobey's lack of standing and the expiration of the applicable statutory limitations period preclude Lysobey from receiving compensation for the taking of access rights to the subject property in the 1960s, long before Lysobey owned the property or brought suit seeking redress for the loss of those rights.

¶ 2. Our two previous opinions concerning the subject property include a detailed factual and procedural history of this dispute and the ensuing litigation. See *Okemo Mountain, Inc. v. Town of Ludlow*, 164 Vt. 447, 671 A.2d 1263 (1995) [hereinafter *Okemo I*]; *Okemo Mountain, Inc. v. Town of Ludlow*, 171 Vt. 201, 762 A.2d 1219 (2000) [hereinafter *Okemo II*]. The following is a truncated version of those facts. In 1986, Lysobey purchased a thirty-four-acre parcel of land

that abutted the upper part of Okemo Mountain Road above the base lodge of Okemo Mountain ski area, which had been using that portion of the road as a ski trail during the ski season since at least 1963. Two years later, Lysobey applied for and obtained a permit to build a residential home on his property. Following an appeal by the Department and Okemo Mountain, the superior court denied the permit based on its conclusion that the property had neither public road frontage nor access by easement to a public road. Lysobey appealed the court's ruling and went ahead with construction of his house. In *Okemo I*, we reversed and remanded the matter for the superior court to determine whether Lysobey held an easement appurtenant to his land and whether Okemo Mountain Road is a public road under applicable law. 164 Vt. at 452-55, 671 A.2d at 1268-70. On remand, the court concluded that Lysobey had no easement, and that, although Okemo Mountain Road is a public road, Lysobey had no right to use the road to access his property during the ski season. Lysobey appealed again.

¶ 3. In *Okemo II*, we upheld the superior court's determinations that Lysobey had no easement and that Okemo Mountain Road is a public road, but we held that the Department had violated Lysobey's common-law right of access by closing the road in the winter. *Okemo II*, 171 Vt. at 206-10, 762 A.2d at 1223-26. We concluded that although Lysobey was not entitled to injunctive relief under the circumstances, he should be given an opportunity to seek damages through an inverse condemnation action in superior court. *Id.* at 211-13, 762 A.2d at 1227-28. Accordingly, we reversed the superior court's judgment and remanded the matter for further proceedings. On remand, Lysobey instituted his inverse condemnation claim, and the State moved for summary judgment, arguing that Lysobey was not entitled to compensation be-

cause, to the extent that there was a taking, it occurred no later than 1963, when Okemo Mountain Road was closed to winter vehicular use, and therefore the applicable six-year statute of limitations barred recovery. The State also argued that because Lysobey did not buy his property until 1986, long after the taking occurred, he lacked standing to claim compensation for a previous owner's loss of property rights. The superior court denied the State's motion and ultimately concluded that the takings date was April 25, 1989, when the litigation began. Following an evidentiary hearing, a jury determined that Lysobey was entitled to $54,000 in damages for loss of year-round access to his property. The superior court added $85,000 in prejudgment interest, dating back to 1989, as well as attorney's fees and various court-related expenses, making the total judgment just over $150,000.

¶ 4. Both parties appeal. The State argues that (1) the effective date of the taking should be sometime in 1963, long before Lysobey owned the property, thereby precluding him from any recovery because of his lack of standing and the expiration of the applicable limitations period; (2) this Court should overrule *Okemo II* and conclude that no taking occurred because three-season access to Lysobey's property is reasonable; (3) the superior court erroneously awarded attorney's fees, litigation expenses, and costs to Lysobey; and (4) the superior court's award of prejudgment interest should be reduced, assuming its judgment is upheld. Lysobey cross-appeals, arguing that because the Department had no authority to restrict access to his property by giving a private ski area control over a public road, he is entitled to injunctive relief. He asks this Court to rule that no taking has occurred and to require the Department to allow year-round access to his property through the upper portion of Okemo

Mountain Road subject to his agreement to exchange that right for alternative access through other land and lifetime ski passes for family members. We agree with the State's first argument.[1]

¶ 5. The State contends that the superior court erred by establishing the "takings date" as April 25, 1989 rather than sometime in 1963, after which Okemo Mountain Road was closed to vehicular traffic during the ski season. According to the State, because the taking occurred many years before Lysobey purchased his property and more than six years before he sought redress for being denied winter vehicular access to the property, he is foreclosed from obtaining damages for the alleged deprivation by both his lack of standing and the expiration of the applicable limitations period. We agree. At the bifurcated hearing to consider the appropriate takings date, the State presented unchallenged evidence that (1) the 1963 lease between the Department and Okemo Mountain gave the ski area the sole and exclusive right to bar vehicular traffic on the upper portion of Okemo Mountain Road so that the area could be used for skiing; and (2) ever since 1963 Okemo Mountain had closed the road during the ski season pursuant to its right under that lease and

---

[1] We do not reach the State's remaining arguments, particularly those concerning the extent of damages awarded. Nevertheless, we reject the State's arguments that we should reconsider *Okemo II*. Specifically, we decline to reconsider our decision that the State restricted Lysobey's reasonable and convenient access to his property. The State's argument that Lysobey has foot and snowmobile access to his property during the ski season is not supported by the record. Further, we decline to reconsider our decision that three-season access to his property is insufficient.

later renewal leases. The State also submitted letters written by Department officials in the late 1960s concerning the installation of a gate to close Okemo Mountain Road and the placement of signs indicating that the road would be open only from June 15 to October 15 each year. In short, the evidence unequivocally established that pursuant to its lease with the State, Okemo Mountain had the right to close the upper portion of Okemo Mountain Road to all vehicular traffic during the ski season and had done so since at least 1963.

¶ 6. Establishing the takings date "is a question of law, not fact." *United States v. 14.54 Acres of Land*, 599 F. Supp. 123, 125 (S.D.N.Y. 1984) (citing *United States v. Dow*, 357 U.S. 17 (1958)). The takings date in an inverse condemnation action involving loss of access to property is the date on which the government physically interferes with the access. See *De Alfy Properties v. Pima County*, 985 P.2d 522, 524 (Ariz. Ct. App. 1998) (inverse condemnation claim for taking of property owner's right of access accrued when government cut off or substantially impaired access); see also *Kirby Forest Indus. v. United States*, 467 U.S. 1, 5 (1984) (landowner "has a right to bring an 'inverse condemnation' suit to recover the value of the land on the date of the intrusion by the Government"). This is consistent with the general rule that when the government takes possession of property before it acquires title to that property, the former event constitutes the act of taking the property. See *Dow*, 357 U.S. at 21-22. Thus, it is the interference with the property right that creates a right to commence inverse condemnation proceedings, "not the realization of the extent of damages." *Beer v. Minn. Power & Light Co.*, 400 N.W.2d 732, 735 (Minn. 1987). Further, long-established law holds that inverse condemnation actions may be barred by the lapse of time. *Id.* at 736. Indeed, states

often enact a much shorter limitations period for eminent domain and inverse condemnation proceedings than for ordinary civil actions, but when there is no special statute of limitations for such proceedings, the general civil statute of limitations normally applies. *Id.* In Vermont, the general statute of limitations for civil actions is six years. 12 V.S.A. § 511 (civil actions shall be commenced within six years after cause accrues).

¶ 7. Apart from the limitations period, it is well-settled law that the right to recover damages in condemnation proceedings "belongs solely to the person owning or having an interest in the land at the time of the 'taking' and it does not run with the land." 11A E. McQuillin, The Law of Municipal Corporations § 32.132, at 269 (3d ed. 2000); see 2 J. Sackman, Nichols on Eminent Domain § 5.01[5][d], at 5-37 (rev. 3d ed. 2003) ("if the parcel of land from which the taking is made changes hands after the taking has occurred but before compensation has been paid, the right to receive the compensation does not run with the land"); see also *Canney v. City of St. Petersburg*, 466 So. 2d 1193, 1195 (Fla. Dist. Ct. App. 1985) ("Damages to compensate for the taking of land or for injury to land not taken belong to the one who owns the land *at the time of the taking or injury*."); *Crede v. City of Oak Grove*, 979 S.W.2d 529, 534 (Mo. Ct. App. 1998) (damage claim based on inverse condemnation does not pass to subsequent grantees of land); *Riddock v. City of Helena*, 687 P.2d 1386, 1388 (Mont. 1984) ("The only person entitled to recover damages for condemnation is the owner of the land at the time of the taking."); *Hoover v. Pierce County*, 903 P.2d 464, 469 (Wash. Ct. App. 1995) ("Because the right to damages for an injury to property is a personal right belonging to the property owner, the right does not pass to a subsequent purchaser unless expressly conveyed."). The rationale behind this rule has been expressed as follows:

> When the government interferes with a person's right to possession and enjoyment of his property to such an extent so as to create a "taking" in the constitutional sense, a right to compensation vests in the person owning the property at the time of such interference. This right has the status of property, is personal to the owner, and does not run with the land if he should subsequently transfer it without an assignment of such right. The theory is that where the government interferes with a person's property to such a substantial extent, the owner has lost a part of his interest in the real property. Substituted for the property loss is the right to compensation. When the original owner conveys what remains of the realty, he does not transfer the right to compensation for the portion he has lost without a separate assignment of such right. If the rule were otherwise, the original owner of damaged property would suffer a loss and the purchaser of that property would receive a windfall. Presumably, the purchaser will pay the seller only for the real property interest that the seller possesses at the time of the sale and can transfer.

*Brooks Inv. Co. v. City of Bloomington*, 232 N.W.2d 911, 918 (Minn. 1975).

¶ 8. Here, the State is entitled to judgment based on both Lysobey's lack of standing and the running of the applicable limitations period. At the time the taking occurred, no later than 1963, Lysobey did not own the subject property. Indeed, he did not purchase the

property until 1986, more than twenty years after the taking had occurred. Moreover, the six-year statute of limitations had run long before Lysobey purchased the property. The superior court appeared to give short shrift to the State's standing and limitations arguments because it believed that this Court had held in *Okemo II* that Lysobey was entitled to damages for the State's taking of his common-law right of access. Upon being presented with the State's arguments, the superior court commented that this Court had granted Lysobey the right to bring an inverse condemnation action to seek damages, and therefore the statute of limitations would not apply. According to the court, we had already ruled that Lysobey was entitled to damages for the taking regardless of the procedural history of the case. We did not make such a ruling. In *Okemo II*, we stated that Lysobey should be given only "an opportunity to seek [a damages] remedy in the trial court." 171 Vt. at 213, 762 A.2d at 1228. We concluded "that Lysobey's remedy, *if any*, is to recover damages for the inverse condemnation that took part of his access right." *Id.* at 212, 762 A.2d at 1228 (emphasis added). We remanded the matter for the trial court to determine in the first instance "the amount of damages, *if any*, that will compensate Lysobey for the taking of his winter access right." *Id.* at 213, 762 A.2d at 1228 (emphasis added). Thus, on remand, the superior court should have considered the validity of the State's standing and limitations arguments. See *DeVere v. State*, 827 A.2d 997, 999 (N.H. 2003) (general rule is that challenge to party's standing may be raised at any point in proceedings; remand did not preclude State from pursuing its argument that plaintiff lacked standing).

¶ 9. The superior court established the takings date in 1989, concluding that it would be unfair to set the date at a time when the relative rights of the parties were in limbo. We find no legal basis for this reasoning. Indeed, the parties' rights have been in legal limbo throughout these proceedings. The fact remains, however, that the State prevented winter vehicular access to the subject property since at least 1963 through its lease agreement with Okemo Mountain. From that time until the present, Okemo Mountain has asserted its rights under the lease to bar access to the upper portion of Okemo Mountain Road during the ski season so that the road can be used as a ski trail. At the time he purchased the property in 1986, Lysobey knew or should have known that the road was being used as a ski trail. We find unavailing Lysobey's arguments that the snow, not Okemo Mountain, prevented vehicular use of the road during the winter, and that he had no reason to drive to his property during the winter before he constructed a residence there in the late 1980's. Regardless of whether Lysobey or other persons were dissuaded from attempting to drive up Okemo Mountain Road during the winter because of snow conditions or had no reason to do so, the State's lease of the land to Okemo Mountain and the ski area's subsequent use of the road as a ski trail pursuant to the lease precluded that possibility since at least 1963. Our holding in *Okemo I* that Okemo Mountain had failed to establish entitlement to the subject property by adverse possession is not determinative of when the State denied winter access to the property. Nor do we find significant that in 1970 and 1987 the Attorney General's office indicated that prior deeds appeared to give property owners whose land abutted Okemo Mountain Road easements over the road to access their property. Ultimately, the superior court and this Court in *Okemo II* held to the contrary, see 171 Vt. at 205-06, 762 A.2d at 1223-24, and, in any event, Lysobey knew when he purchased his property that the upper portion of

Okemo Mountain Road was being used as a ski trail during the winter.

¶ 10. The procedural posture of this phase of the litigation has been greatly influenced by Lysobey's position that *Okemo II* was wrong in failing to provide him an injunctive remedy, and that any further litigation must be aimed at overturning that decision. As a result of that position, Lysobey presented little opposition to the State's standing and limitations arguments because he was more focused on his position that the Department had no authority to restrict access to his property. Lysobey has repeatedly stated that he does not want any money damages, and that the only reason he sought inverse condemnation following *Okemo II* was to obtain access to his house. In *Okemo II*, we concluded that injunctive relief was inappropriate under the circumstances because of the longstanding use of the road as a ski trail and the Legislature's implied authorization to allow takings in situations such as this, where the Department is properly exercising its regulatory power. 171 Vt. at 211-12, 762 A.2d at 1227-28. None of the arguments raised by Lysobey or the amicus curiae[2] convince us that we should reconsider *Okemo II* or that no taking is possible because the Department is without authority under 10 V.S.A. § 2603(c) to regulate use of roads on land under its jurisdiction.

¶ 11. In any event, the manner in which a taking transpires is irrelevant. "As long as the state acts through one of its arms in such a way as to deprive an individual of his property for public use, it is irrelevant whether the state arm doing the

actual taking has eminent domain power." *Fountain v. Metro. Atlanta Rapid Transit Auth.*, 678 F.2d 1038, 1043-44 (11th Cir. 1982); see *Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 705 P.2d 866, 868 (Cal. 1985) (liability in inverse condemnation action does not depend on showing that defendant has statutory authority to exert eminent domain power). Here, the Department, acting as an arm of the State, restricted access rights to the subject property through its lease with Okemo Mountain. The professed aim of the lease was "to promote winter sports ... and winter recreational facilities ... for the public good." See *Gen. Bldg. Contractors, L.L.C. v. Bd. of Shawnee County*, 66 P.3d 873, 883 (Kan. 2003) (development of recreation facilities in partnership with private enterprise is considered legitimate public purpose for exercise of eminent domain power); see also 2 A. Sackman, *supra*, § 7.01[1], at 7-16 (definition of public use has expanded to become coterminous with scope of sovereign's police power). Irrespective of the Department's eminent domain power, Lysobey was entitled to bring an inverse condemnation action against the Department to obtain compensation for the loss of the right to access his property, but he was not guaranteed relief. In *Okemo II*, we concluded that giving Lysobey winter vehicular access over a ski trail that has been in operation for over fifty years was not an appropriate remedy. 171 Vt. at 211-12, 762 A.2d at 1227-28. We now determine that he is not entitled to monetary damages either, given that the takings date occurred, and the applicable limitations period expired, before Lysobey purchased the property or sought redress for the lack of year-round vehicular access to the property.

¶ 12. Lysobey asks this Court to compel the Department to give him year-round access over Okemo Mountain Road, subject to his agreement to accept

---

[2] We grant amicus curiae's motion to file a reply brief in addition to his original brief. For the most part, his arguments mirror those made by Lysobey. To the extent that they are distinct, we do not find them persuasive.

an alternate right-of-way through other lands owned or formerly owned by Okemo Mountain. No evidence at trial demonstrated that any alternative access to the subject property exists. To the extent that Lysobey is arguing that Okemo Mountain could have or should have provided him with alternative access, he is asking this Court to grant him relief at the expense of Okemo Mountain, which is no longer a party to these proceedings. In effect, Lysobey is presenting us with a nonjusticiable offer of compromise regarding an alternative access on land that apparently is no longer even owned by Okemo Mountain. For obvious reasons, we cannot entertain Lysobey's request for relief. Finally, we reject Lysobey's claim that allowing the Department to regulate Okemo Mountain Road to his detriment entitles him to relief under 42 U.S.C. § 1983. Lysobey fails to explain how he is entitled to relief under § 1983 in this inverse condemnation action. In any event, assuming that his claim is properly preserved, it cannot lie against the Department, which is not a "person" within the meaning of the statute. See *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (state is not "person" under § 1983).

*The July 19, 2002 judgment entered in favor of John Lysobey in this inverse condemnation action is vacated, and judgment is entered in favor of the Vermont Department of Forests, Parks and Recreation.*

¶ 13. **Allen, C.J. (Ret.), Specially Assigned,** concurring. I concur in the disposition of Lysobey's claims on appeal in this case, but, for the reasons stated in my dissent in *Okemo II,* I would reconsider our previous holding that the closing of Okemo Mountain Road in the winter constituted a taking of Lysobey's property. I am authorized to say that Justice Reiber joins in this concurrence.

Motion for reargument denied January 7, 2005.