NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 1

No. 22-AP-096

| | |
|---|---|
| Frances Nesti | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Vermont Agency of Transportation et al. | September Term, 2022 |

Helen M. Toor, J. (motion to dismiss); Samuel Hoar, Jr., J. (final order)

Alexander J. LaRosa of MSK Attorneys, Burlington, for Plaintiff-Appellant.

Susanne R. Young, Attorney General, and Ryan P. Kane, Assistant Attorney General, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** Landowner Frances Nesti appeals two civil-division orders resolving multiple claims in favor of the Vermont Agency of Transportation (VTrans). We affirm.

¶ 2. The following facts are undisputed unless otherwise noted. In 2006, VTrans rebuilt Route 7 in South Burlington and Shelburne. The project included constructing a new, enclosed stormwater-drainage-management system to collect stormwater from the widened road surface. The new system directed stormwater downhill from the road in a westerly direction toward Lake Champlain. Nesti's property lies west of Route 7 and abuts the lake.

¶ 3. VTrans obtained a discharge permit from the Agency of Natural Resources to reconstruct the drainage system. The permit application materials represented that stormwater

discharges would increase relative to preconstruction flows, and VTrans does not dispute that they have. VTrans has made no material change to the system since 2006.

¶ 4. At some point after the reconstruction, the parties dispute exactly when, Nesti began to notice the stormwater runoff was forming a ravine where there had previously been a dry depression. Stormwater did, however, flow over the depression from time to time before 2006. Nesti engaged in a series of conversations with VTrans and Department of Environmental Quality (DEQ) personnel regarding the issue beginning in 2009 or 2010. In January 2013, a VTrans employee sent an email to Nesti representing that "[VTrans'] State legal section . . . believe[s] the State is in the clear," that " 'downhill' property owners have the duty to accept the natural flow of water from 'uphill' properties," and where the State does not acquire "special-purpose easements" to divert water from road surfaces, "it is also possible for the State to have acquired drainage easements by open, notorious and continuous use which has lasted [fifteen] or more years."

¶ 5. Nesti filed suit on December 31, 2018, seeking damages and injunctive relief. She initially pleaded takings, trespass, and private-nuisance claims, and later added claims of ejectment and removal of lateral support.

¶ 6. VTrans moved to dismiss all claims on the basis that each was barred by the six-year statute of limitations for civil actions, 12 V.S.A. § 511, and the doctrine of sovereign immunity. VTrans also argued that the ejectment and lateral support causes of action failed to state a claim. Nesti countered that the fifteen-year statute of limitations for actions for recovery of land, 12 V.S.A. § 501, applied to each claim rather than § 511, and the continuing-tort doctrine caused her trespass and nuisance claims to continually accrue with each new runoff event, even if the claims were subject to § 511.

¶ 7. The civil division dismissed Nesti's takings claim, concluding that the applicable statute of limitations was § 511, not § 501. It concluded that § 511 also applied to Nesti's trespass and nuisance claims. The court found that Nesti's causes of action accrued before December 31,

2

2012, which was the cutoff date for her December 31, 2018, complaint. However, the court permitted Nesti's trespass and nuisance claims to proceed to summary judgment on the question of whether they were continuing torts, and denied the State's motion to dismiss them under the doctrine of sovereign immunity. The court dismissed Nesti's ejectment and lateral support causes of action for failing to state a claim, and Nesti does not appeal those determinations.

¶ 8. Following discovery, VTrans moved for summary judgment on the remaining claims. The civil division concluded that sovereign immunity failed as a defense to Nesti's claims because VTrans could not prove its decisionmaking regarding the stormwater system fit within the discretionary function exception under the Vermont Tort Claims Act, 12 V.S.A. § 5601(e)(1). The court again analyzed Nesti's argument that her takings and tort claims were not time-barred and again concluded that § 511 applied. It also found that Nesti's communications with VTrans and DEQ personnel did not support a conclusion that VTrans was equitably estopped from raising a statute-of-limitations defense. The court lastly determined that the continuing-tort doctrine did not save Nesti's trespass and nuisance claims because it was unlikely this Court would adopt the doctrine, that if it did adopt the doctrine it would not do so here, and the lack of any tortious conduct within the limitations period would take the case out of the doctrine's operation in any event. The court entered judgment for VTrans on all claims.

¶ 9. On appeal Nesti makes essentially four arguments: (1) that her takings claim is not time-barred because it is subject to the fifteen-year limitations period for bringing claims to recover lands under 12 V.S.A. § 501; (2) to the extent the takings claim is time-barred under 12 V.S.A. § 511, it violates the federal and Vermont Constitutions; (3) § 501 also applies to her trespass and nuisance claims; and (4) if § 501 does not apply to the tort claims, they are not time-barred under the continuing-tort doctrine. Though the civil division revisited the question of which statute of limitations to apply to Nesti's takings and tort claims in its summary-judgment decision, we will

3

apply our standard of review for grants of motions to dismiss to (1), (2), and (3), and our standard of review for grants of summary judgment to (4).

¶ 10.    "A motion for failure to state a claim may not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Kaplan v. Morgan Stanley & Co., 2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.) (quotation omitted). The "Court assumes that all well pleaded factual allegations in the complaint are true, as well as all reasonable inferences that may be derived from therefrom." Id. (quotation omitted).

## I.  Takings Claim

¶ 11.    Nesti argues that her takings claim is subject to the fifteen-year statute of limitations for bringing actions to recover lands under 12 V.S.A. § 501, not the six-year statute of limitations for civil actions under 12 V.S.A. § 511.  Nesti argues, in effect, that because VTrans could obtain a prescriptive easement or adversely possess her property after the fifteen-year limitations period, her takings claim cannot be cut off at six years under § 511 because that would be tantamount to granting the State a property interest without just compensation nine years before it could make out a prima facie claim for such an interest.

¶ 12.    "The government cannot take private property for public use 'without just compensation.' " Lorman v. City of Rutland, 2018 VT 64, ¶ 35, 207 Vt. 598, 193 A.3d 1174 (first quoting U.S. Const. amend. V; and then citing Vt. Const. ch. I, art. 2).  "[T]he purpose of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " Ondovchik Fam. Ltd. P'ship v. Agency of Transp., 2010 VT 35, ¶ 19, 187 Vt. 556, 996 A.2d 1179 (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).  "Broadly speaking, the [government] may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings . . . ." United States v. Dow, 357 U.S. 17, 21 (1958).  When the government does not

4

institute condemnation proceedings before taking physical possession of property, the owner must seek just compensation in an inverse-condemnation suit. United States v. Bedford Assocs., 618 F.2d 904, 918 n.28 (2d Cir. 1980). "[L]ong-established law holds that inverse condemnation actions may be barred by the lapse of time." Dep't of Forests, Parks & Recreation v. Town of Ludlow Zoning Bd., 2004 VT 104, ¶ 6, 177 Vt. 623, 869 A.2d 603 (mem.); see United States v. Dickinson, 331 U.S. 745, 747 (1947) (holding that takings claims are subject to six-year civil-action statute of limitations under federal statute). In Vermont, "when there is no special statute of limitations" governing eminent domain and inverse condemnation proceedings, "the general [six-year] statute of limitations for civil actions" applies. Ludlow, 2004 VT 104, ¶ 6 (citing 12 V.S.A. § 511).

¶ 13.    Nesti argues that Ludlow does not control this case because it held only that inverse condemnation actions involving regulatory takings, not physical takings, are governed by § 511. In Ludlow, this Court concluded that because Vermont had no specific limitations statute governing eminent domain or inverse condemnation proceedings, the six-year statute for bringing civil actions in § 511 applied. 2004 VT 104, ¶ 6. We explained that it "is the interference with the property right that creates a right to commence inverse condemnation proceedings," id. (emphasis added), and that "the manner in which a taking transpires is irrelevant." Id. ¶ 11. Nesti's attempt to distinguish Ludlow because it did not involve a physical taking, as Nesti alleges happened here, misses the point. An interference with a property right for a public purpose without the government initiating condemnation proceedings creates a right to bring an inverse condemnation action within six years of a plaintiff's discovery of that interference. See Univ. of Vt. v. W.R. Grace & Co., 152 Vt. 287, 290, 565 A.2d 1354, 1357 (1989) (holding "specifically that the discovery rule should be read into § 511").

¶ 14.    We reaffirm our holding in Ludlow that § 511 applies to physical and regulatory takings claims, and our conclusion is buttressed by several rationales laid out by the Supreme Court

5

of New Jersey in Klumpp v. Borough of Avalon, 997 A.2d 967 (N.J. 2010). In 1962, a severe Atlantic nor'easter devastated much of the New Jersey shoreline, including the Klumpps' beachfront home in the Borough of Avalon. In response, the state legislature passed an act authorizing shoreline municipalities to "repair, restore, replace or construct such protective barriers that were necessary to the health, safety and welfare of the municipality." Id. at 971 (quotation omitted). The act authorized municipalities to enter "such property to take control and possession thereof . . . without first paying any compensation therefor." Id. (quotation omitted). Following the adoption of local ordinances incorporating the act that same year, the Borough erected fencing around a portion of the Klumpps' property, constructed a public footpath across it, and built a protective sand dune over the property between the homesite and the ocean to keep future storm surges from penetrating inland. The municipality never compensated the Klumpps for any of these intrusions. Following years of back-and-forth, during which the municipality denied that its actions amounted to a taking, and lower courts concluded that the statute of limitations had run on a takings claim, the New Jersey Supreme Court granted certiorari.

¶ 15. The question on appeal was whether in the absence of express statutory mandate, New Jersey's six-year statute of limitations for trespass and injuries to real property or thirty-year statute of limitations for adverse possession applied to the Klumpps' claim. The supreme court held that the six-year statute applied. It reasoned that its decision was bolstered by the fact that the federal government also enforces a six-year statute of limitations for inverse condemnation claims. Id. (citing Dickinson, 331 U.S. at 747). It noted that the purpose of appropriating private property for public use "would be undermined if a long period of uncertainty were allowed in respect of property ownership." Id. at 978; see also State v. Atl. Richfield Co., 2016 VT 61, ¶ 26, 202 Vt. 212, 148 A.3d 559 ("The time limits reflected in statutes of limitation represent a balance, affording the opportunity to plaintiffs to develop and present a claim while protecting the

6

legitimate interests of defendants in timely assertion of that claim." (quotation omitted)). The court went on to explain that:

> In circumstances that involve the physical occupation of property by the government, the stark act of the governmental entry and seizure of the property requires the landowner to submit to the physical occupation of his land, and thus provides reasonable assurance that the landowner will have adequate notice and opportunity within a six-year period to institute an inverse condemnation action for just compensation. Moreover, the limited time frame for pursuing a compensation claim advances the public interest in providing fair compensation for the government's taking. The closer in time the landowner commences the action, the more precise the valuation, particularly when improvements by the government may be forthcoming and would alter the condition of the property at the time of the taking.

Klumpp, 997 A.2d at 978 (quotation omitted).[1] We find these rationales persuasive and reaffirm our holding in Ludlow that § 511 applies to both physical and regulatory inverse condemnation claims.

¶ 16. Nesti next cites several cases for the proposition that limiting takings claims to six years is equivalent to giving the government "the power to adversely possess private property in six years rather than the fifteen years [under adverse possession statutes of limitation] applicable to ordinary citizens." Benninghoff v. Tilton, Nos. 284637, 284736, 2009 WL 3789981, at *20 (Mich. Ct. App. Nov. 12, 2009) (per curiam) (quotation omitted); see also City of Sioux Falls v. Miller, 492 N.W.2d 116, 120 (S.D. 1992); Difronzo v. Vill. of Port Sanilac, 419 N.W.2d 756, 759 (Mich. Ct. App. 1988). We disagree with this proposition.

¶ 17. We have noted that "it is generally recognized that public entities, including municipalities, may acquire land by adverse possession." In re .88 Acres of Prop., 165 Vt. 17, 20,

---

[1] While the supreme court concluded the statute of limitations had long since run on the Klumpps' claim, it ultimately held that the balance of the equities favored the extraordinary result of requiring the Borough to compensate the Klumpps due to the Borough's decades-long misrepresentations about the subject property. Id. at 979-81.

676 A.2d 778, 780 (1996) (first citing 7 R. Powell, Powell on Real Property ¶ 1015, at 91–102–03 (P. J. Rohan ed., rev. ed. 1995); and then 10 E. McQuillin, The Law of Municipal Corporations § 28.15, at 43 (3d ed. 1990)).[2] "[A]n adverse possession claim is . . . for recognition of title and enforcement of the rights that accompany title," and the burden of proving adverse possession is on the party asserting it. Roy v. Woodstock Cmty. Tr., Inc., 2013 VT 100A, ¶¶ 35, 37, 195 Vt. 427, 94 A.3d 530. Such a claim can only be brought after the statute of limitations for recovery of land under 12 V.S.A. § 501 has run. Id. ¶ 35. Establishing a prescriptive easement requires "essentially the same" elements as adverse possession. Schonbek v. Chase, 2010 VT 91, ¶ 8, 189 Vt. 79, 14 A.3d 948 (quotation omitted). However, adverse possession, unlike a prescriptive easement, requires "exclusive possession" for the statutory period. Id. (emphasis added) (quoting Restatement (Third) of Prop.: Servitudes § 2.17 cmt. a (2000)).

¶ 18. Assuming for the sake of argument that we would recognize that the State could adversely possess private property, such a potential would stand in stark contrast with its eminent domain power in terms of the legal requirements and public-policy rationales. Under an adverse possession cause of action, the State would have to prove that its "use of the land was open, notorious, hostile and continuous throughout the statutory period of fifteen years." First Congregational Church of Enosburg v. Manley, 2008 VT 9, ¶ 13, 183 Vt. 574, 946 A.2d 830 (mem.) (quotation omitted). Thus, the State would not need to demonstrate either that it tendered just compensation to the affected landowner or that it took the property for public use, two essential elements required to exercise its eminent domain power. See Griswold v. Town Sch. Dist. of Town of Weathersfield, 117 Vt. 224, 226, 88 A.2d 829, 830-31 (1952).

¶ 19. Furthermore, adverse possession arises from a policy choice to keep lands in active use. See Canjar v. Cole, 770 N.W.2d 449, 454 (Mich. Ct. App. 2009) (per curiam) ("The

[2] In contrast, lands appropriated for public use by the State may not be adversely possessed. See Benson v. Hodgdon, 2010 VT 11, ¶ 16, 187 Vt. 607, 992 A.2d 1053 (mem.).

underlying philosophy of a claim for adverse possession is to encourage land use, as it favors the productive use of land over its disuse."). A taking, on the other hand, arises from a policy that in some instances a landowner must bear, with just compensation, government appropriation of his or her land for public use. See Ondovchik, 2010 VT 35, ¶ 19. The respective statutes of limitations reflect these policy choices: fifteen years under § 501 reflects a strong policy favoring private property ownership but nevertheless holding landowners accountable to keep lands in active use, while six years under § 511 represents a policy choice disfavoring long periods of uncertainty with respect to private lands appropriated for public use.

¶ 20. It simply does not follow that because the State could conceivably take a prescriptive easement in Nesti's property, the limitations period for a takings claim must be coterminous with that possibility—a possibility we have never expressly recognized. Moreover, a prescriptive-easement claim might not ripen for years or decades following the act that constitutes the taking itself. In sum, adverse possession and takings claims are distinct causes of action and subject to different limitations periods because each is a product of contrasting public-policy choices.

## II. Constitutional Argument

¶ 21. Nesti next argues that barring her takings claim under § 511 violates the federal and Vermont Constitutions. She advances no state-specific constitutional argument on this issue; therefore, we will focus our inquiry on the Fifth Amendment "[b]ecause the federal and Vermont Constitutions use virtually the same test for takings review." Ondovchik, 2010 VT 35, ¶ 14 (quotation omitted).

¶ 22. As an initial matter, neither party points out that the civil division did not actually address this argument in either its summary-judgment order or on the State's motion to dismiss. For Nesti, not assigning error to the civil division's failure to address her constitutional arguments results in waiver in this Court. See Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83,

9

¶ 11, 182 Vt. 282, 938 A.2d 1215 (holding that where litigant raised question of law on appeal but did not assert trial court abused its discretion ruling on question, "any argument" regarding question "was waived on appeal"); see also State v. Nash, 2019 VT 73, ¶ 18, 211 Vt. 160, 221 A.3d 386 (holding that issues not challenged for plain error on appeal are waived without review); see also V.R.A.P. 28(a)(3) (requiring appellants to provide, among other things, "specific claims of error"). Accordingly, we do not address the merits of this argument.

### III. Trespass and Nuisance Claims

¶ 23. Nesti next argues that her tort claims are also subject to 12 V.S.A. § 501, and not 12 V.S.A. § 511. She contends that our case law supports her position, and that because trespass is the "inverse" of adverse possession, it is subject to § 501. In the alternative, she requests that this Court apply the continuing-tort doctrine to her claims.

### A. Trespass

¶ 24. "Trespass involves the unprivileged entry on to the land in possession of another." Wild v. Brooks, 2004 VT 74, ¶ 17, 177 Vt. 171, 862 A.2d 225. "Liability for trespass arises when one intentionally enters or causes a thing to enter the land of another. Thus, one who causes water to enter the land of another is liable for trespass." Canton v. Graniteville Fire Dist. No. 4, 171 Vt. 551, 552, 762 A.2d 808, 810 (2000) (mem.) (citation omitted). Trespass claims are subject to the six-year statute of limitations provided by 12 V.S.A. § 511. Jadallah v. Town of Fairfax, 2018 VT 34, ¶ 16, 207 Vt. 413, 186 A.3d 1111 (holding that appellant's claims, including trespass, "are all civil" rendering them subject to "the six-year period under § 511"); Wheeler v. Town of St. Johnsbury, 87 Vt. 46, 51-52, 87 A. 349, 351-52 (1913) (same).

¶ 25. Though Nesti does not cite Jadallah, she does not dispute the civil division's correct citation to Wheeler to bar her trespass claim under § 511. Instead, she points us to several other cases she maintains hold otherwise. They do not and we address each in turn.

10

¶ 26. Nesti contends that Beecher v. Parmele, 9 Vt. 352 (1837), stands for the proposition that "an owner of land may expel an intruder through the claims of trespass and ejectment when said intruder has not possessed the claimant's land for [fifteen] years." Beecher does not stand for that. Instead, the Court held that mutual acquiescence to a line running through a parcel held in severalty for the limitations period of fifteen years establishes the line as a property boundary as a matter of law. Id. at 355-56. Accordingly, if, following fifteen years of mutual acquiescence, the owner of one side of the parcel crosses the boundary line and "enters" the other side, the owner suffering that entry can sue for trespass, provided the suit commences within six years of when the cause of action accrues. Id. at 356-57. Beecher contains nothing that suggests a trespass action is subject to a fifteen-year statute of limitations.

¶ 27. Nesti argues that this Court also held that trespass actions are subject to the fifteen-year statute of limitations in Hughes v. Graves, 39 Vt. 359 (1867). But Hughes instead resolved a question of ownership by adverse possession. In 1861, Hughes acquired a parcel in Fair Haven, Vermont from a man named Quenton. Sometime between 1806 and 1847, Quenton enclosed a strip of land with a fence, which became the dooryard to the Quenton family home. The land, however, did not belong to Quenton, it belonged to the adjoining property. In 1847, a predecessor-in-interest of defendant Graves sawed the fence in two. A few months later, however, the Quentons rebuilt the fence and continued to occupy the dooryard until 1861 when they conveyed the property to plaintiff Hughes. The Quenton deed did not describe the disputed parcel. In 1862, Graves purchased the adjoining lot, acquiring a deed that did describe the parcel as belonging to him, and constructed a store that occupied Hughes's dooryard and came within eight inches of the Hughes's house. Hughes sued for trespass and sought damages. The Court held that the Quentons had acquired the disputed parcel by adverse possession, noted that Graves's deed described nothing "except what his grantors lost and Quenton gained," and affirmed the judgment against Graves for ten dollars. Id. at 361, 364. We did not hold that the statute of limitations for adverse

11

possession applied to trespass claims. We note, however, that Hughes filed his complaint in 1866, within six years following the construction of the store in 1862.

¶ 28. Nesti lastly argues that <u>Dernier v. Rutland Railway Light & Power Co.</u>, 94 Vt. 187, 110 A. 4 (1920), states that a litigant has fifteen years to bring a trespass claim. It does not. In 1902, Rutland Railway, Light and Power Company dammed the Castleton River, which caused it to overflow onto Dernier's adjoining property. Dernier sued for trespass and the railway defended, in part, by arguing that it had acquired a prescriptive easement in Dernier's land, and the cause of action was therefore barred by the fifteen-year statute of limitations. The case went to trial and the jury found for the railway. On appeal, we reversed, holding, in part, that the jury instructions misstated the law as to whether the railway had acquired an easement. <u>Id</u>. at 192, 110 A. at 6-7. The jury had been instructed that if it found that the railway had caused damage to Dernier's property, regardless of the extent of the damage during the prescriptive period, the railway took an easement by prescription. However, we noted that the evidence showed that the overflow covered only a small portion of Dernier's property in 1904, and gradually increased in coverage up to the time of the suit. <u>Id</u>. Accordingly, the Court explained, the railway took an easement, if any, to only a small part of Denier's land. <u>Id</u>. Our holding was that the court erred by instructing the jury that, in effect, if it was to find for the railway in any respect, Dernier could not recover for damages even under the six-year year statute of limitations for trespass. <u>Id</u>. at 193-94, 110 A. at 7.

¶ 29. Contrary to Nesti's reasoning, trespass is not the "inverse" of adverse possession. She argues that she should have fifteen years to eject the adverse possessor and that by "trimming" nine years off § 501, this Court would be overturning two centuries of Vermont case law. Nesti is correct that she has fifteen years to bring an action to recover lands under § 501, but she is incorrect that she has fifteen years—or more—to bring a trespass action from the date on which the trespass cause of action accrues. Nesti, in effect, is arguing that a trespass claim always accrues on the same date that § 501 begins to run. While true here, this is not always the case. Nesti herself cites

12

cases where § 501, or the predecessor to § 501, begins to run <u>before</u> the accrual date for the trespass claim.  See, e.g., <u>Beecher</u>, 9 Vt. at 353, 356-57 (trespass action brought in 1837; statute of limitations for adverse possession began running thirty years earlier); <u>Hughes</u>, 39 Vt. 359 (statute of limitations for adverse possession began running between 1806 and 1847 and trespass claim accrued in summer of 1862).  And even where § 501 and § 511 do begin running on the same date, as here, the aggrieved party has the full six-year period to file a trespass claim, and the full fifteen years to recover lands under § 501.  It is simply not true that affirming the civil division will mean "trimming" nine years off the fifteen years permitted by statute to recover lands.  The civil division concluded Nesti was on notice that her claims accrued before December 31, 2012 (a conclusion Nesti does not challenge on appeal), and she failed to file her complaint within the six years the Legislature provided for such actions.

### B.  Nuisance

¶ 30.    Nesti argues that she also has fifteen years to bring a private nuisance claim against VTrans.  She contends that because a nuisance claim "seeks the recovery" of the property owner's use and enjoyment of property, one of the sticks in the bundle of fee-simple ownership, it follows that nuisance is also subject to the fifteen-year period to recover lands under § 501.  She argues that <u>Alpstetten Ass'n v. Kelly</u>, 137 Vt. 508, 408 A.2d 644 (1979), did not hold that private nuisance claims are subject to the six-year period under § 511, and that a United States Supreme Court case, <u>International Paper Co. v. Ouellette</u>, 479 U.S. 481 (1987), demonstrates that in Vermont nuisance is not subject to § 511.  These arguments are without merit.

¶ 31.    Private nuisance is "a substantial and unreasonable interference with a person's interest in the use and enjoyment of land."  <u>Jones v. Hart</u>, 2021 VT 61, ¶ 26, 215 Vt. __, 261 A.3d 1126.  Interference with the flow of surface water can result in a nuisance.  <u>Canton</u>, 171 Vt. at 552, 762 A.2d at 810; <u>Lorman</u>, 2018 VT 64, ¶ 25.  A claimant has six years to bring a nuisance cause of action following the causes of action's accrual.  <u>Alpstetten</u>, 137 Vt. at 512-13, 408 A.2d at 646

13

("The appellant alleged a tortious act resulting in an interference with the use and enjoyment of his property. Accordingly, the six[-]year statute of limitations is applicable.").

¶ 32. Nesti argues that Alpstetten does not control the outcome here because the Court did not analyze whether the fifteen-year period applied to nuisance claims involving "the recovery of lands." However, this argument assumes that § 501 is inherently relevant to a private nuisance claim, which it is not. We characterized Alpstetten as requiring "the six-year rather than the three-year statute of limitations where the defendant counterclaimed that he was inconvenienced, harassed and embarrassed as a result of the plaintiff's decision to shut off the water supply to the defendant's vacation home complex." Fitzgerald v. Congleton, 155 Vt. 283, 291, 583 A.2d 595, 600 (1990). We explained that the holding in Alpstetten was "that § 511 applied since the alleged harm centered on an interference with the use and enjoyment of [the] defendant's property rather than a bodily injury [requiring application of the three-year statute of limitations]." Id. No matter how Nesti chooses to style her nuisance cause of action, whether as a "recovery of the use and enjoyment of property" as she does on appeal or as "an unreasonable interference with [her] use and enjoyment of her home" as she does in her pleadings, Alpstetten is clear that § 511 applies because nuisance, fundamentally, is an "interference with a person's interest in and enjoyment of land." Jones, 2021 VT 61, ¶ 26.

¶ 33. Nesti also contends that applying § 501 is consistent with International Paper Co. v. Ouellette. But the question in Ouellette was whether the Clean Water Act displaced a state common-law nuisance cause of action, not which statute of limitations to apply to such a claim. 479 U.S. at 483. In Ouellette, Vermont plaintiffs filed suit in state court alleging that a pulp mill's discharge into Lake Champlain tortiously interfered with the use and enjoyment of their beachfront properties. The mill, operated by International Paper Company, was located on the New York side of the lake, and discharged effluent into the lake through a pipe that ended "a short distance before the state boundary line that divides the lake." Id. at 484. The opinion does not state when the

discharge began. However, Nesti says the discharge began "much more than six years" before plaintiffs filed suit.

¶ 34. There are two fatal flaws in Nesti's argument: (1) the issue of which limitations statute to apply is never addressed in the opinion, and (2) even assuming for the sake of argument that Nesti is correct, she fails to account for the fact that the accrual date, on which the limitations statute begins to run, is a factual question distinct from when the discharge began. Jadallah, 2018 VT 34, ¶ 17 ("A cause of action accrues upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery." (quotation omitted)). Ouellette does not in any way support applying § 501 to Nesti's nuisance claim.

## C. Continuing-Tort Doctrine

¶ 35. Nesti's final argument is that her trespass and nuisance claims are timely under the continuing-tort doctrine, and she asks this Court to apply the doctrine for the first time. Nesti spends considerable time explaining why the alleged torts here are "continuing" and not "permanent," the former of which, she argues, are recoverable under the doctrine. Nesti argues that she suffers a continuing harm with "each rush of water creating a fresh harm for which a new [cause of action] should accrue." The civil division addressed this argument in some detail before ultimately concluding that it was unlikely that this Court would adopt the doctrine on these facts, and that even if it did, VTrans committed no tortious act within the limitations period, a required element under the doctrine we identified in Gettis v. Green Mountain Economic Development Corp., 2005 VT 117, 179 Vt. 117, 892 A.2d 162. We agree that VTrans has committed no tortious act within the limitations period, and we therefore need not decide whether the 2006 reconstruction was a permanent act, or whether the stormwater events Nesti alleges the reconstruction made possible are themselves continuing acts.

15

¶ 36.    We review this argument using the same standard as the civil division.  Lorman, 2018 VT 64, ¶ 8.  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' "  Id. (quoting V.R.C.P. 56(a)).  "When a defendant moves for summary judgment, it satisfies its legal burden by presenting at least one legally sufficient defense that would bar [the] plaintiff's claim."  Id. (quotation and brackets omitted).

¶ 37.    "The continuing tort doctrine allows a plaintiff to support his or her cause of action with events that occurred outside of the limitations period by delaying the accrual of a claim until the date of the last injury or the date the tortious acts cease."  Gettis, 2005 VT 117, ¶ 23 (quotation omitted).  The doctrine requires "at least two elements: a continuing wrong, and some action contributing to the wrong that occurred within the limitations period."  Id. ¶ 25.  A tortious act, which cannot be "simply the continuing ill effects of prior tortious acts," must "fall within the limitation period."  Id. ¶ 28.  This Court has never applied the doctrine, but we have "indicated a variation of it may exist for discrimination cases," following the federal courts.  Id. ¶ 24 (citing Lee v. Univ. of Vt., 173 Vt. 626, 626-27, 800 A.2d 444, 445-46 (2002) (mem.)).

¶ 38.    Nesti has not alleged that VTrans committed a tortious act after the 2006 reconstruction.  Without at least one such act occurring within the six-year limitations period, we are unpersuaded by Nesti's argument because, even if we adopted the doctrine, it would not apply in this case.  Accordingly, Nesti's tort claims are time-barred.

Affirmed.

FOR THE COURT:

_____

Associate Justice

16