2013 VT 54

### In re Moore Accessory Structure Permit and Use
### (Gary Smith and Betsy Siebeck, Appellants)

[75 A.3d 625]

No. 12-305

Present: Dooley, Skoglund, Burgess and Robinson, JJ., and Carroll, Supr. J., Specially Assigned

Opinion Filed July 19, 2013

*Marsha Smith Meekins* of *Marsha Smith Meekins, LLC,* South Burlington, for Appellants.

*A. Jay Kenlan* of *Kenlan, Schwiebert, Facey & Goss, P.C.,* Rutland, for Appellee.

¶ 1. **Burgess, J.** Neighbors appeal a decision of the Superior Court, Environmental Division that certain buildings used to process timber into lumber qualify as "farm structures" exempt

from local zoning regulation under 24 V.S.A. § 4413(d)(1). We affirm.

¶ 2. The facts may be summarized as follows. Appellees are three siblings — two brothers and a sister — whose family has owned and operated a farm in the Town of Pomfret for many generations. In 1973, appellees' parents deeded a ten-acre parcel of the farm property to one of the brothers to build and operate a pipe organ construction and restoration business, which was completed the following year. In 1974, the parents deeded a 135-acre parcel to their daughter and her husband to operate an apple orchard. In 1993, the three siblings and their mother (since deceased) formed the Moore Family Farm Limited Partnership to maintain and operate the farm, and all of the remaining farm property was transferred to the partnership. These several parcels, together with an adjacent property deeded from an aunt, are jointly managed by the siblings and consist of approximately 100 acres of crop land, 200 acres of managed sugarbush, 50 acres used as pasture, and 850 acres of forest land.

¶ 3. At issue here are several existing or proposed accessory buildings located on the ten-acre parcel. One structure, known as the sawmill building, houses a WoodMizer Bandsaw which is used to saw logs harvested from the farm property. A second, known as the Lumber Drying Kiln, is used to dry the sawn lumber. A third, proposed structure would house a Newman planer (currently housed elsewhere) to finish the cut lumber and store wood shavings produced during its operation. In 2009, neighbors, who live across Pomfret Road from the farm, appealed to the Environmental Division from a decision by the Town's zoning board of adjustment (ZBA) granting a construction permit for the Newman planer building. They also appealed a ZBA denial of their request to enforce what they considered to be zoning violations concerning the sawmill and kiln buildings.

¶ 4. In October 2010, the trial court issued a written ruling on the parties' cross-motions for summary judgment. The court concluded, in relevant part, that the wood-processing buildings at issue did not satisfy the criteria for a permit exemption under the Pomfret zoning ordinance, but that factual issues remained as to whether they qualified as "farm structures" exempt from local zoning regulation under state law. See 24 V.S.A. § 4413(d)(1)-(d)(2) (providing that zoning bylaws "shall not regulate . . . the construction of farm structures" and defining the latter to mean a

building "for housing livestock, raising horticultural or agronomic plants, or carrying out other practices associated with . . . farming practices . . . as 'farming' is defined in 10 V.S.A. § 6001(22)"). Accordingly, the matter was scheduled for a hearing to take evidence on that issue.

¶ 5. An evidentiary hearing was held over two days in July 2011. After additional briefing, the court issued a written ruling in March 2012. The trial court found that lumber produced from timber harvested on the farm had been used for the construction, maintenance, and repair of buildings and structures on the farm properties. Slab wood created as a byproduct from the sawing had been used to fuel the sugar making operation and to heat other farm buildings; sawdust and shavings from the sawing and planing had been used as livestock bedding. All of these activities, the court further found, were "customary and, indeed, economically necessary" to operate a farm in Vermont, and constituted "practices associated" with farming consistent with the provisions in 24 V.S.A. § 4413(d)(1) and 10 V.S.A. § 6001(22). As summarized by the trial court: "The processing of logs from a farm to be used *on* the farm (including the sawing of logs into lumber, the planing and drying of that lumber, and the production, as byproducts, of slab wood, shavings and sawdust) are practices associated" with farming. Accordingly, the court concluded that the buildings at issue qualified as "farm structures" exempt from local zoning regulation under 24 V.S.A. § 4413(d), that the Newman planer building therefore did not require a local zoning permit, and that the sawmill and kiln buildings could not therefore be found in violation of the local zoning ordinance. The court also concluded that appellees' use of land to grow trees constituted the growing of a "fiber" crop and therefore qualified as "farming" under 10 V.S.A. § 6001(22)(A). This appeal followed.

¶ 6. Neighbors contend the trial court erred in: (1) construing the growing of "fiber" under the farming statute to include the growing of trees; and (2) finding that appellees' lumber processing activities represented "practices associated with" farming that qualified the several buildings at issue as "farm structures" exempt from local zoning regulation.

¶ 7. An understanding of neighbors' claims requires a brief review of the operative statutory scheme. State law exempts certain activities from local zoning regulation, "including the construction of farm structures." 24 V.S.A. § 4413(d). A "farm

structure" is defined as "a building, enclosure, or fence for housing livestock, raising horticultural or agronomic plants, or carrying out other practices associated with accepted agricultural or farming practices, including a silo, as 'farming' is defined in § 6001(22), but excludes a dwelling for human habitation." *Id.* § 4413(d)(1). "Farming" under 10 V.S.A. § 6001(22) is defined, in turn, to mean a number of activities, including "(A) the cultivation or other use of land for growing food, fiber, Christmas trees, maple sap, or horticultural and orchard crops," "(B) the raising, feeding, or management of livestock, poultry, fish, or bees," or "(D) the production of maple syrup."

¶ 8. There is no dispute here that appellees engage in a variety of activities which meet the definition of "farming" under § 6001(22), including the cultivation of food crops; the raising, feeding, and management of livestock; and the production of maple syrup. Furthermore, appellees adduced substantial expert testimony that their wood-processing activities are supportive of, and closely interrelated with, their farming operation as a whole. For example, Robert Harrington, an experienced farmer and civil engineer, testified that the sawing, planing, and drying of lumber from timber harvested by Vermont farmers and used to maintain and repair farm buildings and create byproducts for fuel and livestock bedding form "an integral part of sustaining their agricultural operation."

¶ 9. Thomas McElvoy, a professor in the School of Natural Resources at the University of Vermont with thirty years of experience providing extension services to Vermont farmers, testified to the growing use of "silvicultural activities . . . to make the farm more sustainable" in Vermont. He testified that appellees' sawing of logs harvested on the farm, planing and drying of the resulting lumber for repair of farm buildings, and use of the byproducts to heat the sugar-producing operation and provide bedding for the livestock represent "the epitome" of sustainable agriculture, and constitute "practices associated with agricultural farming." Roger Allbee, an expert in international agricultural trade, experienced farmer, and former Vermont Commissioner of Agriculture described appellees' wood processing activities as "common" in Vermont, and also testified that they represented practices long associated with farming.

¶ 10. The expert testimony adduced by appellees reflects in many respects a larger movement toward a more sustainable

agricultural economy. Many states have enacted statutes comparable to the limitation on local zoning set forth in 24 V.S.A. § 4413 to facilitate efforts by farmers — similar to those undertaken by appellees — to diversify and become more self-sufficient. See, e.g., R. Branan, *Zoning Limitations and Opportunities for Farm Enterprise Diversification: Searching for New Meaning in Old Definitions*, Nat'l Agric. L. Ctr. 1, 8-9 (May 2004), http://national aglawcenter.org (discussing state laws designed to facilitate farm "diversification efforts" and "[m]ore intensive vertical integration" by pre-empting restrictive local regulation and encouraging creative uses of farmland for more profitability); N. Carter, Comment, *Agriculture, Communities and Rural Environment Initiative: Can Small Family Farms and Large Agribusiness Live Peacefully in Pennsylvania?*, 16 Widener L.J. 1023, 1037 n.77 (2007) (discussing Pennsylvania statute prohibiting local zoning regulations from interfering with "normal agricultural operation" defined, in part, to include use of "machinery designed and used for agricultural operations, including . . . saw mills"); T. Daloz, *Farm Preservation: A Vermont Land-Use Perspective*, 12 Vt. J. Envtl. L. 427, 451 (2011) (noting that § 4413(d)'s. preemption of local regulation over "farm structures" is focused "on supporting and enhancing agriculture"). This broad movement is also reflected in Vermont's "right-to-farm" law, enacted by the Legislature out of a recognition that, in order to survive, Vermont farms must enjoy the freedom to "diversify" and engage in "reasonable agricultural activities." 12 V.S.A. § 5751.

¶ 11. The record evidence, therefore, fully supports the trial court's conclusion that appellees' wood-processing activities constitute "practices associated with" farming, and that the structures used for carrying out these activities are exempt from local zoning regulation under 24 V.S.A. § 4413(d)(1).

■ ¶ 12. Neighbors' arguments to the contrary are unpersuasive. They maintain that cutting and planing wood is a "manufacturing," not a "farming," activity. The argument ignores the operative language of the statute, however, which exempts buildings used for carrying out "practices *associated* with" farming. *Id.* (emphasis added). As discussed, ample evidence supports the trial court's finding that processing lumber from timber

harvested on site and using it for farm related purposes are practices long and intimately associated with farming in Vermont.[*]

¶ 13. Neighbors also object that this conclusion conflates farming with forestry, and renders superfluous statutes dealing with logging and forest products. See, e.g., 10 V.S.A. § 2601 (declaring conservation and economic management of forest land and its products to be in public interest); 10 V.S.A. § 2701 (declaring sustainable management and use of forest and woodlands and promotion of markets for value-added forest products to be public policy of state). On the contrary, our holding is entirely divorced from any issue as to whether farming or agriculture includes the raising and harvesting of trees. Although, as noted, the trial court found that growing trees for lumber was raising a "fiber" crop within the meaning of "farming" under 10 V.S.A. § 6001(22)(A), this was not essential to its ruling or to our holding, and we therefore do not address it. It is sufficient to hold that the evidence supported the trial court's finding that the buildings here were used for "practices associated with" farming under 24 V.S.A. § 4413(d)(1), and we discern no inconsistency between this conclusion and other laws governing the management and marketing of forest products. Accordingly, we find no basis to disturb the judgment. Our holding renders it unnecessary to address neighbors' additional claims concerning appellees' compliance with the local zoning ordinance.

*Affirmed.*

---

[*] There is no evidence here that appellees were conducting a commercial sawmill operation, processing timber — theirs or others — for sale off-site, and we therefore need not determine whether the farm-structure exemption would apply in those circumstances.