NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 27

No. 24-AP-273

| | |
|---|---|
| In re 8 Taft Street DRB & NOV Appeals (Stephen Wille Padnos & Sharon Wille Padnos, Appellants) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | March Term, 2025 |

Thomas G. Walsh, J.

William B. Towle of Ward & Towle Law, South Burlington, for Appellants.

Megan Nelson and Alexander J. LaRosa of MSK Attorneys, Burlington, for Appellee Jason Struthers.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1. **CARROLL, J.** Neighbors Stephen and Sharon Wille Padnos appeal two Environmental Division decisions granting summary judgment to landowner Jason Struthers on the grounds that the City of Essex Junction cannot regulate landowner's duck-raising and cannabis-cultivation operations. The court concluded that landowner's duck-raising operation is exempt from municipal regulation under 24 V.S.A. § 4413(d)(1)(A) because it constitutes a commercial farming operation subject to the Required Agricultural Practices (RAPs) Rule. The court also concluded the City could not enforce its zoning regulations on landowner's cannabis-cultivation operations under 7 V.S.A. § 869(f)(2), which provides that certain outdoor cannabis cultivation shall "not be regulated by a municipal bylaw . . . in the same manner that Required Agricultural Practices are not regulated by a municipal bylaw under 24 V.S.A. § 4413(d)(1)(A)." We hold that

neither statute exempts landowner's operations from all municipal regulation and thus reverse the Environmental Division's decisions and remand for proceedings consistent with this opinion.

## I. Background

¶ 2.    The following facts are undisputed for summary-judgment purposes unless otherwise noted. Landowner owns property at 8 Taft Street in Essex Junction, Vermont, in the City's Residential-1 Zoning District. There, landowner raises and sells ducks and duck eggs. In May 2023, the Agency of Agriculture, Food and Markets issued landowner a farm determination, confirming these activities met the definition of "farming" under the Agency's RAPs Rule, subjecting him to compliance with the Rule. See Required Agricultural Practices Rule for the Agricultural Nonpoint Source Pollution Control Program § 3.1, Code of Vt. Rules 20 010 008 [hereinafter RAPs Rule], http://www.lexisnexis.com/hottopics/codeofvtrules ("Persons engaged in farming and the agricultural practices as defined in . . . this rule and who meet the minimum threshold criteria for applicability of this rule . . . must meet all applicable Required Agricultural Practices conditions, restrictions, and operating standards.").[1] Landowner also operates a commercial cannabis-growing operation through his company, Trichome VT, LLC, which has an outdoor tier 1 cultivator's license issued by the Vermont Cannabis Control Board.

---

[1] It is undisputed that the Agency issued landowner a farm determination for his non-cannabis related activities. To the extent neighbors dispute the facts within the farm determination, we do not address these facts because they are immaterial to the outcome of this appeal, given our conclusion that 24 V.S.A. § 4413(d)(1)(A) does not exempt farming subject to the RAPs Rule from all municipal regulation. See In re Estate of Fitzsimmons, 2013 VT 95, ¶ 13, 195 Vt. 94, 86 A.3d 1026 ("An issue of fact is material only if it might affect the outcome." (quotation omitted)); see also Sutton v. Purzycki, 2022 VT 56, ¶ 83 n. 8, 217 Vt. 326, 295 A.3d 377 (declining to address arguments that do not affect outcome of appeal).

To the extent neighbors are challenging the validity of landowner's farm determination, or whether landowner's activities constitute "farming," we do not address this argument. The Environmental Division declined to address this issue below, concluding it lacked jurisdiction to do so. Neighbors fail to assign error to the court's decision and thus we decline to consider the issue on appeal. See Nesti v. Vt. Agency of Transp., 2023 VT 1, ¶ 22, 217 Vt. 423, 296 A.3d 729 ("[N]ot assigning error to the [lower court's] failure to address . . . arguments results in waiver in this Court.").

2

¶ 3. The City's zoning regulations do not allow agricultural, farming, or cannabis-cultivation establishments as permitted or conditional uses in areas zoned Residential-1. Landowner, neighbors, and the City sought clarification from the City's zoning officer as to whether the City could enforce its zoning regulations against landowner. In July 2023, the City's zoning officer issued a memorandum declining to enforce the City's Residential-1 zoning regulations against landowner's duck-raising and cannabis-cultivation operations, concluding the City's zoning regulations conflicted with, as relevant here, 24 V.S.A. § 4413(d)(1)(A) and 7 V.S.A. § 869(f)(2).

¶ 4. Neighbors appealed the zoning officer's decision to the City's Development Review Board (DRB). The DRB reversed the zoning officer's decision as to the duck-raising operation, concluding 24 V.S.A. § 4413(d)(1)(A) precludes only municipal regulation of agricultural water quality. It upheld the zoning officer's decision regarding landowner's cannabis-cultivation operation. Neighbors appealed the DRB decision to the Environmental Division. Landowner cross-appealed.

¶ 5. Following the DRB decision, the City issued landowner a notice of violation for his duck-raising operation, stating his activities were "in violation of [s]ection 724 of the [City's Land Development Code] which prohibits the raising and keeping of livestock outside of the Planned Agricultural and Planned Exposition zoning districts." Landowner appealed to the DRB, which upheld the notice of violation. Landowner then appealed to the Environmental Division and neighbors cross-appealed.

¶ 6. At issue before the Environmental Division in the first appeal were neighbors' and landowner's cross-motions for partial summary judgment on the question of whether the City can regulate landowner's duck-raising operation. In the second appeal, neighbors moved for partial summary judgment on the issue of whether the City can regulate landowner's cannabis-cultivation operation. Neighbors also moved to combine the two proceedings.

3

¶ 7.    The Environmental Division granted summary judgment in favor of landowner in both cases.  The court concluded the term "required agricultural practices" in 24 V.S.A. § 4413(d)(1)(A) means the farming activities, or "agricultural practices," regulated by the RAPs Rule.  The court determined the City could not regulate landowner's duck-raising activities because the Agency determined landowner's duck-raising operation was a farming activity subject to the RAPs Rule.  In another decision, the court concluded "a municipality may not constrain licensed outdoor cultivators to certain zoning districts" because 7 V.S.A. § 869(f)(2) cites § 4413(d)(1)(A).  The court also denied neighbors' motion to consolidate the proceedings because it concluded it lacked authority to do so.  Neighbors appealed both Environmental Division decisions to this Court.  The dockets were joined for the purposes of this appeal.  V.R.A.P. 3(c)(2).

## II.  Analysis

¶ 8.    At issue on appeal is (1) to what extent landowner's duck-raising operation is exempt from municipal regulation under 24 V.S.A. § 4413(d)(1)(A); and (2) to what extent landowner's licensed outdoor cannabis-cultivation operation is exempt from municipal regulation under 7 V.S.A. § 869(f)(2).[2]  Neighbors maintain that these provisions limit municipal regulation of the agricultural water-quality rules established by the RAPs as opposed to exempting agriculture or farming subject to the RAPs and licensed outdoor cannabis cultivators from all municipal

---

[2]    Neighbors also contend the Environmental Division has the power to combine proceedings under Vermont Rule of Environmental Court Procedure 2(b).  Specifically, neighbors ask the Court to "clarify" if the Environmental Division may combine "proceedings with common issues of law and fact into one proceeding" under the rule.  However, neighbors fail to explain how they were prejudiced by the court's decision or otherwise explain why the court's decision constitutes reversible error and thus we decline to address this issue as inadequately briefed.  See V.R.A.P. 28(a) (providing requirements for appellant's briefing); Kneebinding, Inc. v. Howell, 2020 VT 99, ¶ 61, 213 Vt. 598, 251 A.3d 13 ("Mere naked statements, unsupported by argument . . . constitutes inadequate briefing and merit no consideration." (quotation omitted)); see also In re S.S., 2024 VT 87, __ Vt. __, 331 A.3d 1075 ("[T]his Court's jurisdiction is limited and does not allow this Court to render an advisory opinion.").

regulation related to those activities, as the Environmental Division held. We address each statutory provision in turn.

¶ 9. "This Court reviews summary-judgment decisions from the Environmental Division de novo." In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 18, 212 Vt. 554, 238 A.3d 637 (noting we apply "same standard as the environmental court" (quotation omitted)). Summary judgment is proper "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Id. "We review questions of statutory interpretation de novo." State v. Colehamer, 2023 VT 39, ¶ 41, 218 Vt. 230, 308 A.3d 440.

### A. Duck-Raising Operations

¶ 10. We first address whether farming activities subject to the RAPs Rule are exempt from all municipal regulation under 24 V.S.A. § 4413(d)(1)(A). We begin with a brief overview of the relevant statutory and regulatory scheme. The Legislature has directed the Secretary of Agriculture, Food and Markets, as well as the Secretary of Natural Resources, to "implement[] and enforc[e] programs, plans, and practices developed for reducing and eliminating agricultural nonpoint source pollutants and discharges from concentrated animal feeding operations." 6 V.S.A. § 4810(d). The Legislature has also charged the Agency of Agriculture, Food and Markets with ensuring that these programs, plans, and practices "concerning agricultural nonpoint source pollution [are] consistent with the water quality standards and water pollution control requirements of 10 V.S.A. chapter 47 and the federal Clean Water Act." Id. (footnote omitted). Specifically, the Legislature directed the Agency to adopt rules to "implement and enforce agricultural land use practices" in two categories: required agricultural practices and best management practices. Id. § 4810(a)-(c).

¶ 11. Our review here focuses on the required agricultural practices. The enabling statute anticipates that the "Required Agricultural Practices (RAPs) shall be management standards to be followed by all persons engaged in farming" in Vermont. Id. § 4810(b). Specifically, "[t]hese

5

standards shall address activities that have a potential for causing agricultural pollutants to enter the groundwater and waters of the State, including dairy and other livestock operations" and shall "include . . . practices for farmers in preventing agricultural pollutants from entering the groundwater and waters of the State when engaged in animal waste management and disposal, soil amendment applications, plant fertilization, and pest and weed control." Id. The standards "shall be designed to protect water quality and shall be practical and cost-effective to implement, as determined by the Secretary." Id. In turn, the Agency adopted what is now titled "Required Agricultural Practices Rule for the Agricultural Nonpoint Source Pollution Control Program."[3] Under this Rule, "[p]ersons engaged in farming and the agricultural practices as defined in . . . th[e] rule and who meet the minimum threshold criteria for applicability of th[e] rule . . . must meet all applicable Required Agricultural Practices, conditions, restrictions, and operating standards." RAPs Rule § 3.1.

¶ 12. With this background in mind, we turn to the disputed statutory provision at issue, 24 V.S.A. § 4413(d)(1)(A), which states: "[a] bylaw under [chapter 117 of title 24] shall not regulate . . . required agricultural practices, including the construction of farm structures, as those practices are defined by the Secretary of Agriculture, Food and Markets."

¶ 13. The goal of statutory interpretation is to carry out the Legislature's intent. Baldauf v. Vt. State Treasurer, 2021 VT 29, ¶ 11, 215 Vt. 18, 255 A.3d 731. When interpreting a statute, we start with the plain meaning. Id. If the statute's text is unambiguous, we enforce the "statute

---

[3] Initially, the Agency promulgated these management standards in the Accepted Agricultural Practices Rule according to the original statutory mandate. See 1991, No. 261 (Adj. Sess.), § 4 (listing the two categories of agricultural land use practices as "accepted agricultural practices" and "best management practices"); RAPs Rule § 1.1. Both 6 V.S.A. § 4810(b) and 24 V.S.A. § 4413(d)(1)(a) were amended by Act 64, "[a]n act relating to improving the quality of State waters" in 2015. See 2015, No. 64, §§ 4, 12, 52. The Act changed "accepted agricultural practices" to "required agricultural practices," and required the Agency to update certain standards. Id. Subsequently, the Agency promulgated what is now the RAPs Rule and updated the standards in accordance with the Act. See id. §§ 4, 12; RAPs Rule § 1.1.

according to its terms and express meaning." Brennan v. Town of Colchester, 169 Vt. 175, 178, 730 A.2d 601, 604 (1999). The Court turns to additional tools of statutory construction, such as legislative history, only when faced with ambiguous statutory language. In re 204 N. Ave. NOV, 2019 VT 52, ¶ 5, 210 Vt. 572, 218 A.3d 24.

¶ 14. The plain language of § 4413(d)(1)(A) requires us to look to the RAPs Rule for how the Secretary has defined "required agricultural practices." The Court approaches "regulatory construction in the same manner as we do statutory interpretation." In re Williston Inn Grp., 2008 VT 47, ¶ 14, 183 Vt. 621, 949 A.2d 1073 (mem.) (noting "our overall goal is to discern the intent of the drafters"). The text of the RAPs Rule states that, in accordance with the enabling legislation in 6 V.S.A. § 4810, required agricultural practices are the "farm and land management practices that will control and reduce agricultural nonpoint source pollution and subsequent nutrient losses from farm fields and production areas to surface and ground waters of the State or across property boundaries." RAPs Rule § 1.3 (emphasis added). Persons engaged in certain "farming and agricultural practices" must comply with the Rule. Id. § 3.1. The Rule's requirements include "conditions, restrictions, and operating standards" relating to discharges, storage of waste and inputs, nutrient and soil management, manure application, buffer zones, animal mortality management, composting, and bank stabilization. Id. § 6. The Rule also provides for limitations on livestock's access to waters, groundwater quality-control measures, and standards relating to the construction of farm structures. Id. §§ 7-9. Accordingly, § 4413(d)(1)(A) prohibits municipal regulation of such standards and limitations set by the Secretary of Agriculture, Food and Markets in the RAPs Rule.

¶ 15. As landowner emphasizes, not all farming and agricultural practices are subject to the RAPs Rule. As noted above, these mandatory practices apply only to persons engaged in farming and agricultural practices that satisfy certain operational criteria. RAPs Rule § 3.1. Under the Rule, as relevant here, "farming" is defined as "the raising, feeding, or management of

7

livestock, poultry, fish, or bees." Id. § 2.16(b). Compliance with the RAPs Rule is mandatory if a person is engaged in farming and meets certain minimum criteria, such as when the person "has produced an annual gross income from the sale of agricultural products of" at least $2000 "in an average year." Id. § 3.1(b). The "raising, feeding, or manag[ement]" of a minimum number of livestock on at least four contiguous acres may also subject a person engaged in farming to the RAPs Rule. Id. § 3.1(d).

¶ 16. While not all farming is subject to the RAPs Rule, the plain text of § 4413(d)(1)(A) does not support the interpretation that all "agricultural practices," or farming, that are subject to the RAPs Rule are exempt from all municipal regulation. Landowner asserts that his duck-raising operation is exempt from all municipal regulation related to his farming activity because the Agency determined his farming activities must comply with the RAPs Rule. However, landowner's interpretation ignores the plain language of § 4413(d)(1)(A) and otherwise renders the term "required" superfluous. 204 N. Ave. NOV, 2019 VT 52, ¶ 7 ("When interpreting a statute, we presume that language is inserted advisedly and that the Legislature did not intend to create surplusage." (alteration omitted) (quotation omitted)). There is a difference between "agricultural practices" subject to the RAPs Rule and "agricultural practices" required by the Rule. Had the Legislature intended to prohibit all municipal regulation of farming subject to the RAPs it could have done so; "[h]owever, it did not do so, and we presume it chose its words advisedly." Epsom v. Crandall, 2019 VT 74, ¶ 30, 211 Vt. 94, 220 A.3d 1247.

¶ 17. Likewise, the use of the term "regulate" in § 4413(d)(1) does not mean that the Legislature intended this provision to prevent municipalities from regulating RAPs-regulated farming. The word "regulate" is not otherwise defined in the statute here so we may look to dictionary definitions "to determine the plain and ordinary meaning" of the term. In re Dep't of Fin. Regul., 2025 VT 10, ¶ 15, __ Vt. __, __ A.3d __ (quotation omitted). Black's Law Dictionary defines "regulate" as "to control (an activity or process) esp[ecially] through the implementation

8

of rules." Regulate, Black's Law Dictionary (12th ed. 2024). The Merriam-Webster dictionary defines "regulate" as "to govern or direct according to rule." Regulate, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/regulate [https://perma.cc/HRS9-V7RE]. Thus, § 4413(d)(1)(A) states that municipalities may not "govern or direct according to rule" "required agricultural practices" as defined by the Secretary. Id. The Legislature's use of the term "regulate," or the fact that the definition of "regulate" uses the word "rule" does not imply that the Legislature intended to prevent municipal regulation of farming regulated by the RAPs Rule.

¶ 18.   Additionally, the similar definitions of "farming" found in the RAPs Rule and 10 V.S.A. § 6001(22) do not imply the Legislature intended farming to be protected by § 4413(d)(1)(A) in a similar manner as other statutes that protect agriculture by providing for farming exemptions. See In re Ochs, 2006 VT 122, ¶ 11, 181 Vt. 541, 915 A.2d 780 (mem.) (noting that " 'construction of improvements for farming . . . purposes below the elevation of 2,500 feet' " are exempt from Act 250 review" (alteration in original) (quoting 10 V.S.A. § 6001(3)(D)(i))). The fact that "the construction of improvements for farming" is exempt from Act 250 has no bearing on the limitation of municipal regulation of "required agricultural practices" in § 4413(d)(1)(A). We are unpersuaded by the fact that the RAPs Rule defines "farming," or landowner's assertion that the Secretary's definition of "farming" in the RAPs Rule is "substantially similar" to that of the Legislature's definition in Act 250. See 10 V.S.A. § 6001(22) (defining farming to include "raising, feeding, or management of livestock, poultry, fish or bees"). Section § 4413(d)(1)(A) does not prohibit municipal regulation of "farming" as defined by the Secretary. See State v. O'Neil, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) ("It is inappropriate to read into a statute something which is not there unless it is necessary in order to make the statute effective.").

¶ 19. The Environmental Division noted that its conclusion "is limited to farming activities defined by the RAPs Rule and 10 V.S.A. § 6001(22)" and that "[a]ctivities which do not meet this definition may still be subject to municipal regulation." In other words, the court concluded that a municipality may regulate the keeping of chickens, "but only to the extent that such regulated activities do not rise to a level where they are farming activities subject to the RAPs." We reach the opposite conclusion, however. For example, a person is subject to the RAPs Rule if they are engaged in the "raising, feeding or managing" of at least fifteen goats on at least four "contiguous acres." RAPs Rule § 3.1(d)(4). According to the Environmental Division's interpretation of § 4413(d)(1)(A), a municipality could prohibit the keeping of fourteen or less goats on lots of at least four contiguous acres in residentially zoned areas because those farming activities would not be subject to the RAPs Rule. But if that person has fifteen goats, subjecting them to the jurisdiction of the RAPs Rule, they would be exempt from such regulation. Surely the Legislature did not intend such an anomalous result. See State v. Tierney, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) ("It is [our policy] to avoid a construction of a statute that leads to absurd or irrational results.").

¶ 20. Landowner's argument that In re Moore Accessory Structure Permit & Use, 2013 VT 54, 194 Vt. 159, 75 A.3d 625, governs our interpretation of § 4413(d)(1)(A) is similarly unpersuasive. Landowner relies on Moore for the proposition that the Legislature enacted § 4413 as part of a larger statutory scheme intended to support farming in Vermont by broadly exempting farming from municipal regulation. In Moore, we examined whether buildings used for timber processing were "farm structures" used to conduct practices related to farming and were therefore exempt from municipal regulation. 2013 VT 54, ¶¶ 1, 11 (noting § 4413(d)(2)(A) defines farm structures as "a building, enclosure, or fence for . . . carrying out other practices associated with accepted agricultural or farming practices" (quotation omitted)). We rejected the neighbors' argument that cutting and planing wood was a manufacturing—not farming—activity while

10

recognizing that lumber processing and harvesting "are practices long and intimately associated with farming in Vermont." Id. ¶ 12. We further acknowledged that this conclusion was bolstered by the fact that § 4413 reflects recognition by the Legislature "that, in order to survive, Vermont farms must enjoy the freedom to 'diversify' and engage in 'reasonable agricultural activities' " Id. ¶ 10 (quoting Vermont's "Right-to-Farm" law, 12 V.S.A. § 5751)). We did not, however, address the meaning of "required agricultural practices," and our interpretation of the term "farm structure"—a term specifically defined by the Legislature in 24 V.S.A. § 4413(d)(2)(A)—has no bearing on how the Secretary has defined "required agricultural practices."

¶ 21. Our interpretation of "required agricultural practices" in § 4413(d)(1)(A) is entirely consistent with the Legislature's directive for the Agency to implement agricultural land-use practices to control water pollution in accordance with 10 V.S.A. chapter 47 and the federal Clean Water Act. See supra, ¶¶ 10-11. The statutory language here simply prevents municipalities from adopting contradictory or duplicative regulations as to those standards and practices imposed by the Secretary on certain farming activities subject to the RAPs Rule. Cf. 10 V.S.A. § 6001(3)(E) (prohibiting Act 250 permit issued for development on land "devoted to farming activity" as defined in 10 V.S.A. § 6001(22) from "impos[ing] conditions . . . that restrict or conflict with required agricultural practices adopted by the Secretary of Agriculture, Food and Markets"); RAPs Rule § 3.1(e) (providing that person "engaging in other agricultural practices on less than 4.0 contiguous acres in size" who causes "adverse water quality impacts" may be subject to Rule if they are in "municipality where no ordinances are in place to manage the activities causing the water-quality impacts").

¶ 22. This conclusion is strengthened by changes to the statutory language in both 6 V.S.A. § 4810 and 24 V.S.A. § 4413(d)(1)(A). As noted above, supra, ¶ 11 n.3, 6 V.S.A. § 4810— the enabling legislation for the RAPs Rule—originally required the Agency to implement rules "to reduce the amount of agricultural pollutants" in two categories: "accepted agricultural practices"

and "best management practices." See 1991, No. 261 (Adj. Sess.), § 4. Section 4413(d) of chapter 24, enacted in 2004, prohibited municipal bylaws from "regulat[ing] accepted agricultural . . . practices . . . as those practices are defined by the secretary." 2003, No. 115 (Adj. Sess.), § 95. In 2015, § 4810 was amended, changing "accepted agricultural practices" to "required agricultural practices." See 2015, No. 64, § 12. Concurrently, § 4413(d)(1) was amended changing "accepted agricultural practices" to "required agricultural practices." See 2015, No. 64, § 52. These changes together reflect our conclusion that "required agricultural practices" refers to the policies established by 6 V.S.A. § 4810 and means the standards intended to reduce agricultural water pollution that the Secretary has imposed on certain "farming and agricultural practices." See Robes v. Town of Hartford, 161 Vt. 187, 194, 636 A.2d 342, 347 (1993) ("When the same word is used in statutes in pari materia, it will bear the same meaning throughout, unless it is obvious that another meaning was intended.").

¶ 23.    Accordingly, § 4413(d)(1)(A) does not prohibit all municipal regulation of farming if that farming is subject to the RAPs Rule, and landowner's duck-raising operation is not exempt from municipal zoning solely because his activities are subject to the RAPs Rule. Rather, § 4413(d)(1)(A) prohibits municipal regulation of "required agricultural practices," or the agricultural land-management standards intended to protect Vermont's waters established by the RAPs Rule and imposed on certain "agricultural practices." We therefore reverse the Environmental Division's decision granting summary judgment to landowner.

B.  Licensed Outdoor Cannabis Cultivation

¶ 24.    Next, we address whether licensed outdoor cannabis cultivation is exempt from all municipal regulation under 7 V.S.A. § 869(f)(2). Chapter 33 of Title 7 consists of statutes regulating cannabis establishments. See 7 V.S.A. § 861(8) (defining "cannabis establishment" as "a cannabis cultivator, propagation cultivator, wholesaler, product manufacturer, retailer, testing laboratory, or integrated licensee licensed by the Board to engage in commercial cannabis

activity"). At issue here is § 869, which permits municipal regulation of cannabis establishments "unless otherwise provided under this chapter." Id. § 869(c). The relevant parts of the section provide:

> (a) A cannabis establishment shall not be regulated as "farming" under the Required Agricultural Practices, 6 V.S.A. chapter 215, or other State law, and cannabis produced from cultivation shall not be considered an agricultural product, farm crop, or agricultural crop for the purposes of 32 V.S.A. chapter 124, 32 V.S.A. § 9741, or other relevant State law.
>
> . . .
>
> (d)(1) The cultivation, processing, and manufacturing of cannabis by all cultivators regulated under this chapter shall comply with the following sections of the Required Agricultural Practices as administered and enforced by the Board:
>
> (A) section 6, regarding conditions, restriction, and operating standards;
>
> (B) section 8, regarding groundwater quality and groundwater quality investigations; and
>
> (C) section 12, regarding subsurface tile drainage.
>
> . . .
>
> (f) Notwithstanding subsection (a) of this section, a cultivator licensed under this chapter who initiates cultivation of cannabis outdoors on a parcel of land shall:
>
> . . .
>
> (2) not be regulated by a municipal bylaw adopted under 24 V.S.A. chapter 117 in the same manner that Required Agricultural Practices are not regulated by a municipal bylaw under 24 V.S.A. § 4413(d)(1)(A), except that there shall be . . . minimum setback distance[s] between the cannabis plant canopy and a property boundary or edge of a highway.

7 V.S.A. § 869 (emphasis added).[4] On appeal, neighbors argue the Environmental Division erred in concluding landowner's cannabis-cultivation operations are exempt from municipal regulation under § 869(f)(2). We agree.

¶ 25. Because § 869 directly references 24 V.S.A. § 4413(d)(1)(A), our interpretation of "required agricultural practices" above necessarily controls the interpretation of "Required Agricultural Practices" in § 869(f)(2). See Athens Sch. Dist. v. Vt. State Bd. of Educ., 2020 VT 52, ¶ 30, 212 Vt. 455, 237 A.3d 671 ("In construing statutes to give effect to legislative intent, we seek to harmonize statutes and not find conflict if possible." (quotation omitted)). The plain language of § 869(f)(2) similarly dictates municipalities cannot regulate licensed outdoor cannabis cultivators as to the farm and land-management practices established by the Secretary to control nonpoint source pollution in Vermont waters in the same manner as § 4413(d)(1)(A). Although § 869(a) clarifies that cannabis establishments shall not be regulated as "farming" under the RAPs Rule, this does not affect our interpretation because § 869(d)(1) identifies the specific sections of the RAPs that do apply to cannabis establishments, including licensed outdoor cannabis cultivators. Considered together, these subdivisions establish a scheme whereby licensed outdoor cannabis-cultivation operations are subject to certain provisions of the RAPs Rule, and

---

[4] For the sake of convenience, we quote the current version of the statute here. Neighbors alternatively argue landowner does not fall into the category of licensed outdoor cannabis cultivators governed by the now repealed version of § 869(f). See 2023, No. 65, § 16. However, we do not address this argument because the repealed language neither affects our interpretation of "Required Agricultural Practices" nor impacts the outcome of this appeal given our conclusion that 7 V.S.A. § 869(f)(2) does not exempt landowner from all municipal regulation.

The current version of § 869(f)(2) also includes added language that cites to a newly enacted statute, 24 V.S.A. § 4414a. The Environmental Division declined to address the impact of § 4414a in its interpretation of 7 V.S.A. § 869(f)(2) because the amendments to § 869(f)(2) and § 4414a were not in effect when the court rendered its decision. Neighbors argue these newly enacted provisions, now effective, illustrate legislative intent that licensed outdoor cannabis cultivators are subject to municipal zoning but they fail to assign error to the Environmental Division's decision not to consider these provisions. Accordingly, we decline to address § 4414a here. See Nesti, 2023 VT 1, ¶ 22.

14

municipalities cannot regulate licensed outdoor cannabis cultivators as to the standards and practices established by the RAPs Rule. As discussed above, the plain language demonstrates the Legislature's intent to prevent duplicative or contradictory regulations of these standards and practices.

¶ 26.    Landowner maintains that, like farming and agriculture, the Legislature intended to exempt all licensed outdoor cannabis cultivation from municipal regulation. In other words, landowner asserts that under § 869(f)(2) if an individual is licensed under chapter 33 and engaged in outdoor cannabis cultivation, they are exempt from municipal regulation just as those subject to the RAPs Rule are exempt from municipal regulation. Again, landowner's interpretation ignores the distinction between the "required agricultural practices"—agricultural management standards intended to reduce water pollution—and the "agricultural practices," or farming, subject to the RAPs Rule. Further, landowner's interpretation renders the language "in the same manner that Required Agricultural Practices are not regulated by a municipal bylaw under 24 V.S.A. § 4413(d)(1)(A)" mere surplusage. See In re Beliveau NOV, 2013 VT 41, ¶ 13, 194 Vt. 1, 72 A.3d 918 ("Generally, we do not construe a statute in a way that renders a significant part of it pure surplusage." (quotation omitted)). Had the Legislature intended to wholly exempt licensed outdoor cannabis cultivators from municipal regulation it would be unnecessary to include a direct citation to § 4413(d)(1)(A). See Northfield Sch. Bd. v. Washington S. Educ. Ass'n, 2019 VT 26, ¶ 15, 210 Vt. 15, 210 A.3d 460 ("We presume that the Legislature chose its words advisedly." (quotation omitted)).[5]

---

[5] Both parties urge us to look to versions of the Cannabis Control Board (CCB) Guidance for Municipalities as evidence of the Legislature's intent. See Vt. Cannabis Control Bd., Guidance for Municipalities (2025), https://ccb.vermont.gov/sites/ccb/files/2025-03/Municipal_Guidance_March_2025.pdf [https:/perma.cc/24NS-59FA]. While not binding on this Court, the CCB Guidance is consistent with our interpretation that § 869(f) does not prohibit all municipal regulation of licensed outdoor cannabis-cultivation activity. See id. at 5, 7.

¶ 27. Accordingly, § 869(f)(2) prohibits municipal regulation of licensed outdoor cannabis cultivators as to the water-quality standards and requirements established by the RAPs Rule, or more specifically, the sections of the RAPs Rule that directly apply to cannabis establishments. See 7 V.S.A. § 869(d)(1). Landowner's cannabis-cultivation operation is not exempt from all municipal regulation simply because he is a licensed outdoor cannabis cultivator. Thus, we reverse the Environmental Division's decision granting summary judgment to landowner.

The Environmental Division's decisions granting summary judgment to landowner are reversed and the matters are remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

16